**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
                                          :
INDEPENDENT LABORATORY           :
EMPLOYEES' UNION, INC.,              :
                                          :
                    Plaintiffs,       :        Civil Action No. 14-01728 (FLW)(LHG)
                                          :
          v.                              :                **OPINION**
                                          :
EXXONMOBIL RESEARCH         :
AND ENGINEERING COMPANY  :
                                          :
                    Defendant.      :
—————————————————————:


This action arose out of three grievances filed by members of the Independent Laboratory

Employees Union, Inc. ("ILEU"), requesting to be paid overtime for time spent traveling to or

from conferences. ILEU members are entitled to benefits under a Collective Bargaining

Agreement ("CBA") with their employer, ExxonMobil Research and Engineering Company

("ExxonMobil"). ExxonMobil denied that the employees were entitled to overtime pay, stating

that the claims do not fall within the Collective Bargaining Agreement, but that employee travel

time is subject to a different set of guidelines. ExxonMobil refused to proceed to arbitration. On

March 18, 2014, ILEU filed a petition against ExxonMobil to compel arbitration under the

Federal Arbitration Act, 9 U.S.C. § 4.

For the reasons stated below, the Court finds that ILEU is entitled to arbitration on this

matter, and grants the motion to compel arbitration.


BACKGROUND

ILEU represents certain employees of ExxonMobil, and on June 1, 2010, ILEU and ExxonMobil entered into a Collective Bargaining Agreement ("CBA"). Greenan Cert., Ex. A, Art. 1 Sec. 2; id. at Art. II Sec. 1. The CBA provides for a three-step grievance procedure with regard to "any dispute or question which shall arise concerning the interpretation, application, or enforcement of" the CBA.  Id. at Art. VII Sec. 1–2. In addition, the CBA provides that a grievance is arbitrable so long as it is: "A dispute as to the interpretation of an express provision(s) of this Agreement or any question of fact arising out of an alleged violation of an expression provision(s) in this Agreement if not settled through the grievance procedure established by this Agreement . . . ."  Id. at Art. VIII Sec.1.

A separate section of the CBA provides for "Time Paid Outside of Regular Schedule." Id. at Art. X Sec. 9. According to this section, covered employees will receive "time and one-half" for "work outside of an employee's regular weekly schedule of 40 hours," for "all work in excess of eight (8) hours in any period of 24 consecutive hours," and for "all hours worked" on "scheduled day[s] of rest." Id.

In addition to the CBA, ExxonMobil has issued Travel Pay Guidelines ("Guidelines"), which have been in effect since January 2001. Zimba Cert., Ex. A. These Guidelines apply to "nonrepresented, nonexempt employees"; the applicability to represented employees "is subject to the terms of applicable collective bargaining agreements and local bargaining requirements." Id. Under the Guidelines, travel time "will be compensated as work time." Id. For overnight travel, the travel time is considered work time "when the travel occurs during normal hours of work on scheduled work days or the corresponding hours on non-scheduled days," because the Guidelines "assume[] the employee is not performing Company business during travel status."

Id. However, "[w]hen Company business is conducted during travel, the travel time is work time and compensated as such." Id.

This action arose in April 2013 when three ILEU members filed grievances against ExxonMobil. Zimba Cert., Ex. B. All three employees asserted that they had attended conferences, and were not paid overtime for travel to or home from the conferences. Id. In all three cases, ExxonMobil asserted that the employees were paid in accordance with the Guidelines. In response, ILEU argued that the employees were entitled to overtime under Article X, Section 9(c) of the CBA.  ExxonMobil responded that there is no specific reference to travel in Article X, Section 9(c) of the CBA. According to ExxonMobil, ILEU members are covered by the Guidelines for the purpose of determining travel time pay; ILEU members are considered "nonexempt" because "they are not exempt from the provisions of the Fair Labor Standards Act ('FLSA')" and "nonrepresented" because "even though their employment relationship is governed by the CBA, there is no bargained-for term setting travel time pay within the CBA." Resp. Brief at 1, n.1.

On June 20, 2013, after completing the three-step grievance procedure, ILEU provided notice of election to arbitration to ExxonMobil. Greenan Cert., Ex. C. ILEU framed the arbitrable question as "Did the Company violate the Agreement by not paying Union represented employees overtime while traveling for the Company? If so, what shall the remedy be?" Id. ExxonMobil did not respond or proceed to arbitration. ILEU filed a petition to compel arbitration in this matter.


DISCUSSION

The FAA establishes "a strong federal policy in favor of the resolution of disputes through arbitration." Parilla v. IAP Worldwide Servs. VI, Inc., 368 F.3d 269, 275 (3d Cir. 2004) (citing Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003)); see also 9 U.S.C. § 3. Under the FAA, "where a written agreement evidences an intent on the part of the contracting parties to arbitrate the dispute in question, a court must compel the parties to arbitrate that dispute." CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (2014). According to the Third Circuit, there are three principles that govern whether a dispute is arbitrable: (1) "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"; (2) "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims"; and (3) "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that, an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v. Rohm & Haas Co., 522 F.3d 324, 331 (3d Cir. 2008) (internal quotation marks omitted) (quoting Lukens Steel Co. v. United Steelworkers, 989 F.2d 668, 672–73 (3d Cir. 1993)). When examining the arbitrability of an issue, a court should "'independently review the agreement'" and "'exercise plenary review to determine whether the matter is arbitrable.' " Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Banta Tile & Marble Co., Inc., 344 Fed. Appx. 770, 772 (3d Cir. 2009) (quoting McKinstry Co. v. Sheet Metal Workers' Int'l Assoc., Local Union No. 16, 859 F.2d 1382, 1385 (9th Cir. 1988)).

If all questions of interpretation of a collective bargaining agreement are to be submitted to an arbitrator, the court may only examine "'whether the party seeking arbitration is making a

claim which on its face is governed by the contract.'" <u>Rohm & Haas</u>, 989 F.3d at 331 (quoting

<u>United Steelworkers of Am. v. American Mfg. Co.</u>, 363 U.S. 564, 567–68 (1960)). In the Third

Circuit, a court must consider three questions in determining whether a dispute is arbitrable:

"'(1) Does the present dispute come within the scope of the arbitration clause?[;] (2) does any

other provision of the contract expressly exclude this kind of dispute from arbitration?[;] and (3)

is there any other 'forceful evidence' indicating that the parties intended such an exclusion?'" <u>Id.</u>

(alterations in original) (quoting <u>E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters</u>,

812 F.2d 91, 95 (3d Cir. 1987)). Here, ExxonMobil does not claim that there is any provision of

the contract that expressly excludes this dispute from arbitration, or that there is any "forceful

evidence" indicating that such an exclusion was intended. Therefore, the only issue is whether

the dispute falls within the scope of the arbitration clause.

## A. PRESUMPTION OF ARBITRABILITY

Where an arbitration provision is broad, "'in the absence of any express provision

excluding a particular grievance from arbitration, . . . only the most forceful evidence of a

purpose to exclude the claim from arbitration can prevail.'" <u>E.M. Diagnostic</u>, 812 F.2d at 95

(quoting <u>AT&T Techs. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 650 (1986). For example, a

clause providing for arbitration of "any differences arising with respect to the interpretation of

this contract or the performance of any obligation hereunder," was considered broad and subject

to the presumption of arbitrability. <u>AT&T Techs.</u>, 475 U.S. at 650. In contrast, "cases holding

that the arbitration clauses at issue are narrow have generally relied on language expressly

limiting the scope of the clause to specific subject matter." <u>Rohm & Haas</u>, 522 F.3d at 331.

ILEU argues that the CBA contains a broad arbitration clause, and is therefore subject to

the presumption of arbitrability. Pet. Brief at 4. In response, ExxonMobil argues that the CBA's

arbitration clause is narrow and limited to "the interpretation of 'express provisions' of the CBA." Resp. Brief at 6.  Thus, according to ExxonMobil, there is no presumption of arbitrability. Id.

The arbitration provision in the CBA permits arbitration of "a dispute as to the interpretation of an express provision(s) of this Agreement or any question of fact arising out of an alleged violation of an expression provision(s) in this Agreement." Greenan Cert., Ex. A., Art. VIII Sec.1. This provision is unquestionably broad, as it does not limit the scope of the clause to any particular subject matter, so long as the subject matter is covered by the CBA. See, e.g., Trap Rock Indus. V. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 888 n.5 (3d Cir 1992) (citing E.M. Diagnostics, 812 F.2d at 92; United Steelworkers of Am. v. Lukens Steel, 969 F.2d 1468, 1470 (3d Cir. 1992); Morristown Daily Record v. Graphic Communications Union, Local 8N, 832 F.2d 31, 34 (3d Cir. 1987)) (describing broad arbitration provisions, such as one applying to "any dispute arising out a claimed violation of this Agreement" (emphasis in original)). Thus, the presumption of arbitrability applies.

B.  SCOPE OF THE AGREEMENT

Even if the arbitration provision is broad, the matter in question must still fall within the scope of the agreement before court may order arbitration. Rohm & Haas, 522 F.3d at 332. "Whether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim." CardioNet, Inc., 751 F.3d at 172. The court must determine whether "'the subject matter of the grievance is one that is within the zone of interests that have received protection in the collective bargaining agreement' and one that the parties have agreed to arbitrate." Rite-Aid of Penn. v.

United Food and Commercial Workers Union, Local 1776, 595 F.3d 128, 132 (3d Cir. 2010) (quoting E.M. Diagnostic, 812 F.2d at 95).

For example, in Rohm & Haas, the plaintiffs were seeking to obtain disability benefits pursuant to a plan adopted under ERISA, and filed grievances under their collective bargaining agreement, eventually demanding arbitration. 522 F.3d at 327. The Third Circuit held that the arbitration agreement in the CBA did not cover disability benefits, because it did not "have an article devoted to disability benefits nor does it provide any sort of discussion as to the employees' rights to or calculations regarding such benefits." Id. at 332. Although the CBA permitted arbitration for questions involving "working conditions," the Third Circuit found that "the phrase 'working conditions' has been defined as the physical surroundings of and hazards to a worker" and did not encompass disability benefits. Id. at 333.

ILEU claims that the grievances are within the scope of the arbitration clause because they require the interpretation of Article X, Section 9 of the CBA. Pet. Brief at 5. ExxonMobil asserts that the grievances do not fall within the scope of the arbitration clause because there is no express CBA provision for travel time pay. Id. at 10. According to Exxonmobil, travel pay cannot be covered by Article X, Section 9 of the CBA, because that section only provides overtime pay for "hours worked." Id. To support its position that "hours worked" does not include travel time, Exxon cites a Fact Sheet from the Department of Labor's Wage and Hour Division entitled "Fact Sheet #22: Hours Worked Under the Fair Labor Standards Act (FLSA)", which states that "the Division will not consider as work time that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile." Id. at 11; Zimba Cert., Ex. C. The determination of the meaning of "hours worked,"

as used in Article X, Section 9 of the CBA is a matter left to the arbitrator – even if ExxonMobil believes that determination to be a foregone conclusion by its reference to an FLSA fact sheet.[1]

Unlike in Rohm & Haas, where the CBA was entirely silent on the question of disability benefits, the CBA here provides for overtime pay under certain circumstances. The question presented by the ILEU is whether travel time is included in those circumstances. This is an issue that requires interpretation of the CBA, and, particularly in light of the broad language of the arbitration clause, is a matter which falls within the zone of interests receiving protection under the CBA. Neither the fact that ExxonMobil had previously been applying the Guidelines to ILEU members, nor that a definition of travel time is found within an FLSA fact sheet alters the broad scope of the arbitration clause. Rather, such facts may go to the merits of the claim, which decision is for the arbitrator, nor this Court, to determine. Thus, the Court finds that the question raised by the ILEU falls within the scope of the arbitration clause of the CBA.


CONCLUSION

The Court finds that the subject matter of the grievances falls within the scope of the arbitration clause in the CBA. The Court hereby grants ILEU's petition to compel arbitration.

---

[1] ExxonMobil cites Hodgson v. Corning Glass Works, 474 F.2d 226, 231–32 (2d Cir. 1973) (as cited in Rohm & Haas, 522 F.3d at 333) to support its contention that Department of Labor analysis is relevant to determine definitions of terms and phrases. However, that case relied on legislative history, id. at 231–32, and testimony heard in the case, id. at 231 n.8, as well as the definition of "working conditions" in the Dictionary of Occupational Titles (3d ed. 1965), published by the Department of Labor, id. This Court will not reach the merits of the case, but notes that an online fact sheet, on its own, is not comparable to the evidence presented in Hodgson. It will, however, be up to the arbitrator to determine the effect of that fact sheet when deciding the scope of Article X, Section 9.